```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 12/18/18
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------

DAGHRIB SHAHEED and WAHEEDAH SHAHEED,

                          Plaintiffs,

-v-

POLICE OFFICER STEPHAN KROSKI and POLICE
OFFICER PAUL BLISS,

                          Defendants.

14 Civ. 7424 (PAE)
15 Civ. 3480 (PAE)

OPINION & ORDER

PAUL A. ENGELMAYER, District Judge:

In these consolidated lawsuits, plaintiffs Waheedah Shaheed and Daghrib Shaheed brought claims under 42 U.S.C. § 1983 and parallel state law alleging, *inter alia*, false arrest and imprisonment and excessive force by two New York City police officers, Stephan Kroski and Paul Bliss. Plaintiffs' claims arose from events that followed after the officers entered plaintiffs' apartment on June 6, 2012, pursuant to two Manhattan Family Court orders which authorized the removal of Waheedah Shaheed's two minor children based on findings of imminent risk of danger to the children. On October 18, 2018, following a four-day trial, a jury returned a defense verdict.

Plaintiffs now move under Federal Rule of Civil Procedure 59(a)(1)(A), for a new trial. *See* Dkt. 219 ("Motion"). For the reasons that follow, the Court denies that motion.

I. **Applicable Legal Standards**

Under Rule 59(a)(1)(A), a court, following a jury trial, may, on motion, grant a new trial on some or all issues "for any reason for which a new trial has heretofore been granted in an action at law in federal court." Fed. R. Civ. P. 59(a)(1)(A). "'A motion for a new trial should be

granted when, in the opinion of the district court, the jury has reached a seriously erroneous result or . . . the verdict is a miscarriage of justice.'" *Chin v. Port Auth. of N.Y. & N.J.*, 685 F.3d 135, 146 (2d Cir. 2012) (quoting *Song v. Ives Labs., Inc.*, 957 F.2d 1041, 1047 (2d Cir. 1992)). A court may order a new trial based on findings, *inter alia*, "'that the verdict is against the weight of the evidence . . . or that, for other reasons, the trial was not fair to the party moving.'" *Manlapig v. Jupiter*, 14 Civ. 235 (LGS), 2016 WL 4617305, at *1 (S.D.N.Y. Sept. 6, 2016) (quoting *Santa Maria v. Metro-North Commuter R.R.*, 81 F.3d 265, 273 (2d Cir. 1996)).

"The decision whether to grant a new trial following a jury trial under Rule 59 is 'committed to the sound discretion of the trial judge.'" *Hallinan v. Republic Bank & Trust Co.*, 519 F. Supp. 2d 340, 347 (S.D.N.Y. 2007) (quoting *Metromedia Co. v. Fugazy*, 983 F.2d 350, 363 (2d Cir. 1992), *cert denied*, 508 U.S. 952 (1993)). When the decision whether to grant a Rule 59 motion "depends on assessment of the credibility of the witnesses, it is proper for the court to refrain from setting aside the verdict and granting a new trial." *Raedle v. Credit Agricole Indosez*, 670 F.3d 411, 418 (2d Cir. 2012) (citations omitted). Further, "it is well-settled that Rule 59 is not a vehicle for relitigating old issues, presenting the case under new theories, securing a rehearing on the merits, or otherwise taking a 'second bite at the apple[.]'" *Gagioli S.p.A. v. Gen. Elec. Co.*, No. 14 Civ. 7055 (AJN), 2015 WL 3540848, at *3 (S.D.N.Y. June 5, 2015) (quoting *Analytical Surveys, Inc. v. Tonga Partners, L.P.*, 684 F.3d 36, 52 (2d Cir. 2012)).

## II. Discussion

Plaintiffs' motion recites 13 ostensible bases for a new trial, each set out in a terse (1-3 sentence) paragraph. *See* Motion at 1–5. Plaintiffs also submit a memorandum of law in support

of their motion, which consolidates plaintiffs' 13 points into five. *See* Dkt. 221 ("P. Mem."). Defendants oppose this motion. *See* Dkt. 223 ("D. Mem.").

For the reasons that follow, the Court finds that plaintiffs' motion for a new trial lacks merit.

1.  Plaintiffs first argue that the defendant police officers did not have legal authority to enter the apartment. A search warrant, plaintiffs contend, was needed to make entry legal. Motion ¶¶ 1–4; P. Mem. 3–4. That argument is frivolous.

The evidence adduced at trial included two Family Court orders that explicitly authorized entry into the apartment by officials of the Administration for Children's Services ("ACS") and the police. *See* D. Ex. A-1; D. Ex. A-2. It is well-settled that "in child-abuse investigations, a Family Court order is the equivalent of a search warrant for Fourth Amendment purposes." *Southerland v. City of New York*, 680 F.3d 127, 144 n.15 (2d Cir. 2011) (citing *Nicholson v. Scoppetta*, 344 F.3d 154, 176 (2d Cir. 2003); *Templeton v. Williams*, 193 F.3d 581, 602 (2d Cir. 1999)). These orders were all that the officers needed to authorize their entry into Waheedah Shaheed's apartment. And the defense offered credible testimony that ACS had asked the officers to participate in the entry to remove the children after Waheedah Shaheed had vowed to Shannon Aste, the ACS officer assigned to her children's case, to forcibly resist any attempt to remove them. Tr. 547–48.[1]

Plaintiffs relatedly claim that the officers did not have authority to use force to enter the apartment. Motion ¶¶ 1–4; P. Mem. 3–4. That claim fails for multiple reasons. The defense offered credible testimony that the officers here did not use force in effecting entry. The sole

---

[1] All citations to "Tr." refer to the trial proceedings held on October 15-18, 2018. Dkts. 207–218.

3

exception occurred when Officer Kroski moved Noah Shaheed, who had opened the door, out of the way. Tr. 600–01. Plaintiffs lack standing to assert the rights of Noah Shaheed, an adult who did not join his mother and sister's lawsuit. Even if Waheedah and Daghrib Shaheed had standing to challenge the officers' actions towards Noah Shaheed, moving him aside, where he no longer blocked entry, was plainly reasonable as a means of gaining entry. Finally, dispositive of all arguments challenging the officers' entry, plaintiffs did not bring any claim of unlawful entry.

2. Plaintiffs next argue that the Court erred in excluding evidence regarding the underlying allegations by ACS of child abuse, including testimony and medical records of Waheedah Shaheed's minor children. Motion ¶¶ 5–9; P. Mem. 6–8. Plaintiffs proposed at trial, via such evidence, to impeach ACS's finding of child abuse and thereby to call into question the validity of the Family Court order authorizing entry. Tr. 739–743. This claim is also meritless.

Plaintiffs did not bring any claims against ACS or its employees. It was ACS's investigation that resulted in the Family Court issuing an order authorizing removal of the children. But there was no evidence that any police officer, including the defendants, participated in the ACS investigation, were present in Family Court when the orders were issued, or played any role in bringing the Family Court orders about. The process by which the orders were obtained was thus irrelevant to the claims at trial. Further, the evidence adduced showed that Officer Kroski reviewed the orders before entering the apartment, to ensure that they had been signed by a judge, as they had been. Tr. 592–93. The officers were entitled to rely on the facially valid warrant. As the Court repeatedly reminded plaintiffs' counsel at trial, plaintiffs' claims afforded no charter for litigating the underlying claims of child abuse or mistreatment. See, e.g., Tr. 232, 404, 561, 575, 580, 586–87. The Court properly admonished plaintiffs'

4

counsel for attempting to turn the trial into a referendum on Waheedah Shaheed's parenting. Tr. 561, 575, 586–87.

3. Plaintiffs next argue that it was error to admit, as a business record, a certified ACS record (Defendants' Exhibit H) which indicated that Waheedah Shaheed's children had been removed on an earlier date. Motion ¶ 10; P. Mem. 8. That argument, too, fails.

Plaintiffs were on ample notice of the record, which was produced in discovery. And Exhibit H was used for proper purposes at trial. First, it helped establish Waheedah Shaheed's hostility to ACS. *See* Tr. 324–33. Second, it corroborated Aste's testimony to the effect that in the days preceding the encounter with the police, Waheedah Shaheed had expressed strong hostility to ACS and an intention to forcibly resist any attempt to remove her children. *See id.* Third, Exhibit H was important impeachment evidence. It undermined Waheedah Shaheed's testimony that her children had never previously removed from her custody. *See id.* The Court admitted Exhibit H after carefully evaluating its admissibility under Federal Rule of Evidence 403. And to limit any risk of unfair prejudice, the Court instructed the jury of the limited purposes to which Exhibit H could be considered. *See id.*

4. Plaintiffs next argue that defense counsel Ashley Garman misstated the evidence during summation, in describing the injuries that Waheedah Shaheed incurred in the encounter with the officers. Motion ¶ 11; P. Mem. 9. That claim, too, is meritless.

Plaintiffs do not pinpoint any particular statement in summation that, allegedly, lacked a foundation in the admitted evidence. The Court's assessment—both during trial and on post-trial review—is that defense counsel's characterization of the medical records was accurate. Ms. Garman accurately noted that the medical records do not reflect injuries to Waheedah Shaheed's neck or other corroboration for her claim at trial that she had been strangled. Tr. 835. And Ms.

Garman's descriptions in summations of Waheedah Shaheed's injuries, on the Court's review, all have a solid basis in those records.

Further, plaintiffs' counsel, whose closing argument followed Ms. Garman's, had every opportunity to point out to the jury any part of Waheedah Shaheed's medical records that, purportedly, contravened Ms. Garman's characterizations of them. Plaintiffs' counsel did not do so. The records were available for the jury to review in its deliberations.

Moreover, even if counsel's characterizations in summation of the medical records were imprecise—and the Court does not so find—any such error was harmless. The fundamental issue at trial was whether Waheedah Shaheed had been attacked without provocation by the police officers whom ACS had asked to assist it in removing the children, or whether Waheedah Shaheed, determined to resist the removal of her children, had instigated the physical confrontation with Officer Kroski. The evidence—which Ms. Garman ably marshalled in summation—overwhelmingly supported the defense theory on this vital point. The medical evidence of Waheedah Shaheed's injuries was not, in the Court's assessment, a necessary component of the defense showing.

5. Plaintiffs finally argue, in cursory fashion, that the jury's verdict was against the weight of the evidence. Motion ¶ 12; P. Mem. 8–9. That argument, too, is meritless.

The assembled evidence, in the Court's assessment, lopsidedly favored the defense's version of events. Among other points, (1) the unimpeached testimony of ACS officer Ms. Aste convincingly demonstrated Waheedah Shaheed's stated intention to resist the police officers; (2) Waheedah Shaheed's denial of the statements attributed her by Ms. Aste, and her denial of any previous removals by ACS of her children, completely lacked credibility, so as to undermine Waheedah Shaheed's overall testimony; and (3) the account by Officer Kroski of the events in

the apartment, and of Waheedah Shaheed's unprovoked attacked on him, was highly credible and substantially unimpeached on cross-examination. Far from being at odds with the weight of the evidence, the jury's verdict was consistent with it.

## CONCLUSION

For the reasons above, the Court denies plaintiffs' motion for a new trial under Rule 59. This case remains closed.

SO ORDERED.

*Paul A. Engelmayer*
Paul A. Engelmayer
United States District Judge

Dated: December 18, 2018
      New York, New York